UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

——————

KENNETH W. RIDEAUX,

                    Plaintiff,                    Case No. 2:11-cv-202

v.                                       Honorable R. Allan Edgar

LINDA TRIBLEY et al.,

                    Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act (PLRA), PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). In addition to his complaint (docket #1), Plaintiff has filed a motion to amend or supplement his complaint (docket #9), in which he adds additional facts and claims that are unrelated to those set forth in the complaint. Plaintiff does not require leave of the Court to amend his complaint, however. *See* FED. R. CIV. P. 15(a)(1) (providing that a plaintiff can amend a complaint once as a matter of course

within 21 days of service).  Accordingly, the Court will grant Plaintiff's motion and address the facts
and claims in the original complaint as well as the supplement as if they are both part of Plaintiff's
complaint.[1]  Applying the foregoing standard of review to the complaint, as supplemented, the Court
will dismiss Plaintiff's action for failure to state a claim.

### Factual Allegations

Plaintiff Kenneth W. Rideaux presently is incarcerated at the Ojibway Correctional
Facility (OCF) in Marenisco, Michigan.   He sues the following employees of the Michigan
Department of Corrections (MDOC): Warden Linda Tribley; mail-room employee (unknown)
McLeod; mail-room employee Pete Baron;[2] Assistant Resident Unit Supervisor (ARUS) (unknown)
Kerttu; Assistant Resident Unit Manager (ARUM) M. Marjurin; Nurse Jeannie Stephenson; and Dr.
(unknown) Frisby.

Plaintiff's claims relate to:  (1) the failure of medical staff to issue him tinted glasses
for a medical condition, and (2) the rejection and confiscation by prison staff of certain nude
photographs that Plaintiff received in the mail.

#### 1.    *Tinted glasses*

Plaintiff alleges that suffers from a degenerating retina that causes his eyes to take in
too much light.  To protect his eyes, he must wear tinted glasses.  In November 2010 Officer Axley
told Plaintiff that he needed a medical detail to wear tinted glasses in the building.  Plaintiff did not

---

[1]In the typical case, the Court would require Plaintiff to submit an amended complaint setting forth all of his
claims in one document, so as to avoid confusion about the content of the complaint.  In the instant case, however, the
supplement does not modify the content of the original claims (except in small detail– *see* note 2, *infra*); instead, it adds
entirely new and unrelated claims.  Thus, for purposes of this opinion, the Court will treat the two documents as part of
the entire complaint.

[2]Defendant Baron was incorrectly identified as "Peter Brom" in the original complaint.  (*See* Supplement to
Compl., docket #9, Page ID#41.)

have a detail, so he was sent to a doctor to obtain one.  On November 24, 2010, Plaintiff provided

Dr. Lizebeth Ralles with a prescription for tinted glasses that Plaintiff had obtained through a doctor

at the Michigan Reformatory.  Dr. Ralles then issued Plaintiff a medical detail effective until January

24, 2011.  On December 21, 2010, Plaintiff was seen by an eye doctor, Defendant Frisby.  After

conducting several tests and an examination, Dr. Frisby told Plaintiff that he would not issue Plaintiff

tinted glasses.  Plaintiff showed Dr. Frisby his prescription for tinted glasses, but Dr. Frisby told

Plaintiff that he "did not ca[r]e where plaintiff got his glasses from"; Dr. Frisby did not see

"maculate degeneration" and "was not going to give plaintiff tinted glasses just because he wanted

them."  (Supplement to Compl., docket #9, Page ID#40.)

Plaintiff wrote a grievance about not being allowed to wear tinted lenses in his unit

and he wrote to medical staff.  On January 5, 2011, Plaintiff was seen by Nurse Stephenson.  After

Plaintiff explained his situation to her, she allegedly responded, "Oh Yeeaah!"  (*Id.* at Page ID#42.)

Later, Plaintiff received a response to his grievance indicating that Defendant Stephenson had

cancelled Plaintiff's medical detail for tinted glasses.

### 2.    *Rejected mail*

On January 4, 2011, ARUS Kerttu told Plaintiff that Plaintiff had received some nude

photos that were rejected by the mail room, and that Kerttu would conduct a rejection hearing

hearing.  On January 6, some prisoners told Plaintiff that Kerttu was in his office showing the photos

to other officers in the unit.  Plaintiff went to Kerttu's office and was told that the hearing would not

be held for another few days.

The next day, Officer Axley approached Plaintiff and asked him if he had received

his photos.  Axley told Plaintiff that Axley had seen the photos, that they were "nice," that Axley did

not see anything wrong with them, and that Axley would let Plaintiff have them. (Compl., docket #1, Page ID#5.) Later that day, Kerttu called Plaintiff into his office. Kerttu indicated that Plaintiff had received fifty-nine photos, some of which were of nude individuals; Kerttu said Plaintiff would be able to have some of them, but not all of them. Kerttu also stated that Plaintiff had received a letter from a pen-pal which contained a nude photo. Kerttu said that the photo was rejected because it was nude and the letter was rejected because inmates are not allowed to have pen-pals. Kerttu told Plaintiff that he would conduct a hearing regarding the photos during the next week.

On January 10, Kerttu held a mail-rejection hearing regarding the photos. Kerttu explained that Plaintiff would not be allowed to have any of the photos or the letter containing the nude photo from a pen-pal. Kerttu asked Plaintiff to show that the vendor of the nude photos, South Beach Singles, Inc., was a "publisher that published the photos." (Compl., Page ID#5.) Kerttu called the mail room to determine if South Beach Singles, Inc., was on the list of approved vendors. Kerttu told Plaintiff that nudity was defined in MDOC policy as showing the "buttocks, public area etc.," and stated that he would allow Plaintiff to have some of the photos, not all of them, but he did not want to get into trouble by giving any of the photos to Plaintiff, including the nude photo in the letter from the pen-pal. (Compl., Page ID#5.)

On January 13, Kerttu held a disposition hearing to determine whether Plaintiff wanted to send the photos home or have them destroyed in ninety days. Plaintiff was not allowed to view the photos or the letter and photo from the pen-pal.

On January 20, Plaintiff told ARUM Majurin that he had been allowed to purchase the photos while he was at the Michigan Reformatory but that he had sent them back to the vendor because they were blurry. Plaintiff explained that they were not nude photos, but photos of dancers

- 4 -

in thongs and sexy swimwear. Plaintiff complained that Kerttu was unprofessional in showing the photos to other officers, and complained that he had not been given an opportunity to see the rejected photos. Majurin told Plaintiff that Kerttu could show the photos to another staff member and that the prison could approve an inmate order and then confiscate it as contraband or reject it and have the inmate send it out of the prison at the inmate's expense. Plaintiff complained that this was extortion, but Majurin told Plaintiff that "the staff could do what they wanted to do." (Compl., Page ID#6.)

On April 11, 2011, Plaintiff received a Step III response to his grievance regarding the rejection of the photos.[3] The response indicated that the rejection notice would be reissued and a rehearing would be conducted to reflect the appropriate basis for rejection. In addition, at the rehearing, Plaintiff would be given the opportunity to view the rejected photos. (*Id.*)

On April 14, Plaintiff received a notice that order forms from South Beach Singles, Inc., had been rejected by the mail room.

As relief, Plaintiff seeks a declaratory judgment that: (1) when an ARUS approves an inmate's order and then the mail room rejects the order and requires Plaintiff to send it from the prison at the inmate's expense, and the postage is paid to the Inmate Benefit Fund, this constitutes extortion under state law; (2) the practice of telling officers that they are named in grievances is an infringement on a prisoner's right to redress grievances under the First Amendment; and (3) the practice of preventing grievants from seeing rejected photos is a violation of prison policy directives and the Due Process Clause of the Fourteenth Amendment.

---

[3]The response letter is attached to the complaint at docket #1, Page ID#8.

**Discussion**

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

- 6 -

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  No claim stated (Defendant Baron)

Plaintiff fails to state a claim against Defendant Baron because the complaint does not allege any conduct by Baron or assert that Baron violated Plaintiff's rights. Plaintiff does not mention Baron anywhere in the body of the complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's allegations against Defendant Baron fall short

- 7 -

of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of

the claim showing that the pleader is entitled to relief"), Plaintiff fails to state a claim against him.

### B.    Eighth Amendment claims

Defendants Frisby and Stephenson denied or cancelled Plaintiff's request for a

medical detail to wear tinted glasses.  Plaintiff claims that they were deliberately indifferent to his

medical needs, in violation of the Eighth Amendment.  Plaintiff claims that Dr. Frisby's decision to

deny Plaintiff tinted glasses was arbitrary and that because Dr. Frisby is an optometrist, rather than

an ophalmologist, he was not qualified to diagnose Plaintiff's condition.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment

against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates

prison authorities to provide medical care to incarcerated individuals, as a failure to provide such

care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S.

102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately

indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d

693, 702 (6th Cir. 2001).  A claim for the deprivation of adequate medical care has an objective and

a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component, the plaintiff must allege that the medical need

at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated

under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the

adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical

care is obvious even to a lay person."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir.

2004).  If, however the need involves "minor maladies or non-obvious complaints of a serious need

for medical care," *Blackmore*, 390 F.3d at 898,  the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."  *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even

if the mis-diagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006). In Plaintiff's case, it is clear that he received attention for his medical need. He was examined by an eye doctor, who determined after multiple tests and an examination that tinted glasses were not necessary because the doctor could not find degeneration in Plaintiff's eye. These circumstances do not suggest that Dr. Frisby's decision to deny Plaintiff tinted glasses was arbitrary or deliberately indifferent. Even if another doctor had previously prescribed tinted glasses for Plaintiff, a "difference in medical opinion does not give rise to an Eighth Amendment claim[.]" *Reid v. Sapp*, 84 F. App'x 550, 552 (6th Cir. 2003) (citing *Estelle*, 429 U.S. at 107). Finally, even if Dr. Frisby lacked the expertise to evaluate Plaintiff's particular eye condition, Plaintiff has not stated a claim. At best, Plaintiff has stated a claim of negligence or malpractice for failure to refer Plaintiff to another specialist, which does not rise to the level of an Eighth Amendment violation. *See Estelle*, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice and as such the proper forum is the state court."). In sum, Plaintiff alleges that

- 10 -

he received a medical examination by an eye doctor and was denied tinted lenses based on the findings of that examination. These allegations fail to state an Eighth Amendment claim.

Similarly, Plaintiff's allegations against Nurse Stephenson do not state a claim. Given that a physician had already examined Plaintiff and denied Plaintiff's request for tinted glasses, Plaintiff cannot claim that Nurse Stephenson's denial constituted deliberate indifference. For the foregoing reasons, therefore, Plaintiff fails to state an Eighth Amendment claim against Defendants Frisby and Stephenson.

## C. Equal Protection claim

Plaintiff alleges that unspecified "actions" on the part of Defendant McLeod, a mail room employee, were "discriminatory" because McLeod let other inmates have the "same types" of photos. (Compl., docket #1, Page ID#7.) The Court reads the complaint to assert a violation of Plaintiff's rights under the Equal Protection Clause. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that he is a member of a suspect class or any class. *See Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005) ( "[P]risoners are not considered a suspect class for purposes of equal protection litigation."); *see also Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir.1998). Thus, to establish his equal protection claim based on a "class of one" theory, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly

situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The complaint does not specify what "actions" McLeod took. The complaint merely states that McLeod is a mail room employee and that he previously allowed Plaintiff to keep "photos of females in swimwear showing buttocks." (Compl., docket #1, Page ID#7.) The foregoing allegations arguably fail to provide sufficient notice of the grounds on which Plaintiff's claim rests, because they do not describe McLeod's allegedly unconstitutional conduct. *See Twombly*, 550 U.S. at 555.

Even assuming that McLeod made the initial decision from the mail room to reject Plaintiff's mail, Plaintiff does not allege facts suggesting arbitrary or intentionally discriminatory conduct. The step III grievance response referenced in and attached to the complaint indicates that the pictures at issue were initially rejected by the mail room because they were not sent directly from the publisher. (*See* Ex. 1 to Compl., docket #1, Page ID#8.) The MDOC's mail policies prohibit nude photographs unless they are "included in a publication sent directly from the publisher or an authorized vendor." *See* MDOC POLICY DIRECTIVE 05.03.118 ¶ MM(13). Thus, it appears that the mail room's decision was consistent with MDOC policy, and Plaintiff does not allege otherwise.

Plaintiff claims that McLeod treated similar photos differently on other occasions in the past, but such allegations hardly suggest arbitrary or discriminatory conduct toward Plaintiff. Approval of other nude photos in the past would have been consistent with MDOC policy if those photos were, unlike the photos at issue in the instant case, included in a publication sent from the publisher or an authorized vendor. Moreover, Plaintiff's allegation that McLeod previously allowed

*Plaintiff* to keep similar photos undermines any claim that McLeod intentionally singled out Plaintiff for discriminatory treatment.

In short, Plaintiff's allegations fails to suggest arbitrary or intentionally discriminatory conduct by McLeod. *See Vill. of Willowbrook*, 528 U.S. at 564 (requiring intentional discrimination); *see also Elliot v. Cummings*, 49 F. App'x 220, 226-27 (10th Cir. 2002) (affirming *sua sponte* dismissal where the plaintiff failed to allege that any difference in treatment was intentional). Therefore, Plaintiff's allegations fail to state an equal protection claim. *See Iqbal*, 129 S. Ct. at 1949-50 (stating that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim).[4]

### D.    Due Process claims (official acts)

Plaintiff complains that Defendants Kerttu and Majurin violated his Fourteenth Amendment right to (procedural) due process by preventing Plaintiff from seeing the allegedly nude photos before they were determined to be contraband. Under the Due Process Clause of the Fourteenth Amendment, before depriving an individual of life or a constitutionally protected liberty or property interest the state must afford the individual with notice and an opportunity to be heard. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assoc.*, 442 F.3d 410, 433 (6th Cir. 2006), *rev'd on other grounds*, 551 U.S. 291 (2007); *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). The fundamental requirement of due process is the right to be heard "at a meaningful time

---

[4]Plaintiff does not challenge the validity of the MDOC's written mail policy, and both the Supreme Court and the Sixth Circuit have upheld the constitutional validity of rules rejecting mail that is not from a publisher or an approved vendor, because such rules are specifically designed to prevent the introduction of contraband into the prison. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Ward v. Washtenaw County Sheriff's Dep't*, 881 F.2d 325 (6th Cir. 1989); *see also Fowler v. McGinnis*, No. 94-1468, 1994 WL 54592, at *2 (6th Cir. Oct. 5, 1994). *Cf.* MDOC POLICY DIRECTIVE 05.03.118 ¶ MM (prohibiting "mail that may pose a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner").

and in a meaningful manner." *Mertik v. Blalock*, 983 F.2d 1353, 1364 (6th Cir. 1993) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  The requirements of due process, however, are "flexible and depend on a balancing of the interests affected by the relevant government action." *Walpole v. Hill*, 472 U.S. 445, 454 (1985).  While inmates have an interest in ensuring that they are not arbitrarily subjected to discipline or loss of privileges at the hands of prison officials, this interest "must be accommodated in the distinctive setting of a prison, where disciplinary proceedings 'take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so.'" *Id.* at 454. Accordingly, with respect to the safeguards required by due process, the Court must take into account "the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation." *Id.* at 454-55.

### 1. Defendant Kerttu

Plaintiff complains that Kerttu deprived him of due process in connection with the mail rejection hearings.  According to the complaint, however, Kerttu provided Plaintiff with advance notice of the mail rejection regarding Plaintiff's photos as well as an opportunity to be heard at a hearing.  Thus, it appears that the minimum requirements of due process, i.e. notice and an opportunity to be heard, were satisfied.

Plaintiff contends that Kerttu should have given Plaintiff an opportunity to view the rejected photos, though it is not clear why Plaintiff should have been entitled to this as a matter of due process.  Access to the photos might have given Plaintiff another opportunity to argue that the photos did not meet the definition of "nude" in the MDOC policy. It is unlikely, however, that

- 14 -

Plaintiff's opinions on that issue would have had any impact on the outcome of the proceedings. Presumably Kerttu was capable of evaluating the content of the photos without Plaintiff's assistance.

In any event, it appears that Plaintiff ultimately received the process that he desired. According to the complaint, the prison offered Plaintiff another hearing in which Plaintiff would be able to view the photos. Plaintiff does not allege that Defendants failed to give him this rehearing or that the subsequent hearing was inadequate. Therefore, even if the initial hearing was constitutionally deficient because Plaintiff was prevented from viewing the photos, it appears that this deficiency was corrected and rendered harmless by the rehearing. Accordingly, for the foregoing reasons, Plaintiff fails to state a due-process claim against Kerttu.

## 2. Defendant Majurin

Plaintiff alleges that Majurin violated Plaintiff's due process rights by preventing Plaintiff from seeing the photos during her investigation. Plaintiff did not, however, have a due process right to an investigation. The Due Process Clause entitles one to notice and an adequate opportunity to be heard. *Mertik v. Blalock*, 983 F.2d 1353, 1364. There is no allegation that Majurin denied Plaintiff notice or an opportunity to be heard. Furthermore, as stated, *supra*, with respect to Defendant Kerttu, the violation claimed by Plaintiff was to be corrected at another hearing. Therefore, the claims against Majurin will be dismissed for failure to state a claim.

## 3. Defendant Tribley

Plaintiff claims that Warden Tribley violated Plaintiff's right to due process by allowing the mail rejection decision to stand during the grievance process. According to the grievance response attached to the complaint, Plaintiff grieved the mail-rejection decision and Tribley rejected Plaintiff's grievance at Step II. (*See* Prisoner/Parolee Grievance Appeal Form,

- 15 -

docket #1, Page ID#9) (showing Tribley's Step II response).  As the Court has already stated, however, Plaintiff does not state a due-process claim because it appears that he was given the process to which he claims he was entitled.

Moreover, even if other prison employees violated Plaintiff's right to due process, Warden Tribley may not be held liable for their conduct under a theory of respondeat superior or vicarious liability.  *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.

Furthermore, section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Accordingly, Defendant Tribley's involvement in Plaintiff's grievance process does not suffice to state a claim against her.  Therefore, for all of the foregoing reasons, Plaintiff fails to state a due-process claim against Defendant Tribley.

### E.    Due Process claim (policy)

Plaintiff seeks a declaratory judgment that MDOC's "practice" of preventing inmates from seeing rejected photos is a violation of prison policy directives and the Fourteenth Amendment.  To the extent Plaintiff seeks relief under § 1983 because the MDOC violated its own policies, he fails to state a cognizable § 1983 claim.  Section 1983 is addressed to remedying violations of federal

law, not state law or prison policies. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

   To the extent Plaintiff claims that MDOC has a custom or policy of preventing prisoners from seeing rejected photos, his allegations fail to support the existence of such a policy. A custom or practice must be shown by a "clear and consistent pattern." *Peet v. City of Detroit*, 502 F.3d 557, 568 (6th Cir. 2007) (holding that a municipal policy cannot be inferred "based on a mere three instances that are limited to one police investigation") (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005)).  The complaint sets forth only one instance in which Plaintiff was not allowed to see photos before they were rejected by a hearings officer.  Indeed, Plaintiff's allegation that the prison would allow Plaintiff to see the rejected photos at a rehearing (Compl., docket #1, Page ID#6), suggests that there is no such policy.  Therefore, Plaintiff fails to state a claim that the prison has a policy or practice that violates the requirements of due process.

### F.  First Amendment claim

   Plaintiff contends that the practice of notifying officers that they have been named in grievances violates his "right to redress" under the First Amendment.  No such right exists, however, with respect to the prison grievance system.  There is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98–3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97–2007, 1998 WL 476189, at *1 (6th Cir. Aug.3, 1998); *see also Wynn v. Wolf*, No. 93–2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (no constitutional right to a grievance procedure).  The First Amendment protects a prisoner's right of access to the *courts*. *See Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  Thus, even if Defendants had prevented Plaintiff from obtaining redress

- 17 -

through the grievance procedure, his First Amendment right to access the courts was not compromised.[5]

Furthermore, a viable access-to-the-courts claim requires a showing of "actual injury" to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). The Supreme Court squarely has held that "actual injury" is an element of the claim that must be pled in the complaint. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002) ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."). Plaintiff has not pled injury to pending or contemplated litigation. His failure to do so is an additional reason supporting dismissal of his First Amendment claim.

### G. Conspiracy claims

Plaintiff broadly alleges that Defendants' conduct "amounted to conspiracy to obstruct justice under state and federal laws," and he cites 42 U.S.C. §§ 1985, 1985(2)-(3), and 1986 as the basis for his claim. (*See* Compl., docket #1, Page ID#7.) To state a claim for conspiracy under §§ 1983 and 1985, the allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "It is 'well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'"

---

[5]It is true that the PLRA requires a prisoner to exhaust "available" administrative remedies before bringing a § 1983 claim. *See* 42 U.S.C. § 1997e(a). But if Plaintiff was improperly denied access to the grievance process, that process would not be "available" to him, and Plaintiff would not be required to exhaust the grievance process before initiating a § 1983 action.

*Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan*, No. 94–2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Though the Court has recognized that parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 129 S. Ct. at 1250.

Plaintiff's allegations of conspiracy are wholly conclusory and speculative. None of the allegations establish a link or agreement between the actions of the alleged conspirators. In the words of the Supreme Court, Plaintiff's allegations of parallel conduct, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *See Twombly*, 550 U.S. at 556; *see also Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) ("[A] conclusory allegation that the defendants acted in concert . . . without more, fail[s] to allege a sufficient factual basis to establish any sort of 'meeting of the minds' or to link any of the alleged conspirators in a conspiracy to deprive [plaintiff] of his civil rights. "). Plaintiff therefore fails to state a plausible claim of conspiracy against Defendants.

## H.     State law claims

Finally, Plaintiff asserts that the prison's practice of approving an inmate's order, rejecting it when it arrives, and then requiring the prisoner to send the package out by paying for postage through the "Inmate Benefit Fund" constitutes "extortion under state law." (Compl., Page ID#7.) Plaintiff's state law claim is not cognizable under § 1983. *See Lugar*, 457 U.S. at 924; *Laney*, 501 F.3d at 580-81. To the extent Plaintiff raises an independent state-law claim, the Court declines to exercise jurisdiction over that claim. *See* 28 U.S.C. § 1367(c)(3) (permitting district

- 19 -

courts to decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction); *Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). At this stage of the case, supplemental jurisdiction is not warranted.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.


Dated: _____9/19/2011_____        _____*/s/ R. Allan Edgar*_____
                                       R. Allan Edgar
                                       United States District Judge